UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

HELEN WILLIAMS, ET AL.                    CIVIL ACTION

VERSUS                                    NO: 08-5040

UNITED STATES POSTAL SERVICE, ET AL.      SECTION: R

## ORDER AND REASONS

Before the Court is defendants' Motion for Summary Judgment
(R. Doc. 23).  For the following reasons, the motion is DENIED.

## I. Background

At the center of this case is an automobile accident that
took place in the afternoon of November 7, 2005, on the corner of
Karla Street and Amanda Street in Thibodaux, Louisiana.[1]  The two
streets form a perpendicular intersection.  When approaching the
intersection, drivers on Amanda Street, which runs north-south,
are required to stop at a stop sign.  There is no stop sign for
drivers on Karla Street, which runs east-west.  Both streets have
a posted speed limit of fifteen miles per hour.

On that day, Gail Chaisson, a driver and mail carrier with

---

[1] Plaintiffs' complaint alleges that the accident took
place at the intersection of Amanda Street and Paula Drive, which
is one block away from the corner of Amanda Street and Karla
Street.  (R. Doc. 1.)  In the response to defendant's Motion for
Summary Judgment and in Helen Williams's deposition, however, the
plaintiffs agree that the cross-street was Karla Street.  (*See* R.
Doc. 23, Ex. A at 2; R. Doc. 29.)

the United States Postal Service, was traveling west along Karla Street delivering mail. Plaintiff Helen Williams was traveling south along Amanda Street. Williams came to a full stop at the stop sign and observed Chaisson on the road before she attempted to make a left turn onto Karla Street. While Williams executed her turn, Chaisson collided with the rear of her vehicle. Williams was issued a citation on the scene for failure to yield under Louisiana Revised Statutes § 32:123(B); Chaisson was not. The police officer's report indicated that, at the time of the collision, Chaisson was traveling at ten miles per hour and Williams was traveling at five miles per hour.

After the incident, Williams and her daughter, who was a passenger of the vehicle at the time, filed suit in this Court under the Federal Tort Claims Act ("FTCA"), alleging that Chaisson's negligence was the sole cause of the accident. They seek more than $75,000 for personal injury and property damage.

The government has moved for summary judgment on the basis that Williams's negligence, not Chaisson's, was the sole cause of the accident. Plaintiffs respond by asserting that there are numerous material issues of fact that remain for trial.

## II. Legal Standard

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits

show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). A court must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d 399.

When the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See,*

*e.g., id.* at 325; *Little*, 37 F.3d at 1075; *Isquith ex rel. Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 198 (5th Cir. 1988), *cert. denied*, 488 U.S. 926 (1988).


## III. Discussion

Williams has brought suit under the FTCA, which vests district courts with exclusive jurisdiction over "civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . . ." 28 U.S.C. § 1346(b)(1). The FTCA "is a limited waiver of sovereign immunity that subjects the United States to liability to the same extent as a private party . . . ." *Tindall ex rel. Tindall v. United States*, 901 F.2d 53, 55 (5th Cir. 1990). When hearing a suit under the FTCA, "[t]he court will examine the law of the state where the negligent act or omission occurs to determine liability." *Id.; see also* 28 U.S.C. § 1346(b)(1). Here, that state is Louisiana.

Louisiana courts adhere to "[t]he generally accepted view [] that negligence is defined as conduct which falls below the standard established by law for the protection of others against an unreasonable risk of harm." *Dobson v. La. Power & Light Co.*, 567 So. 2d 569, 574 (La. 1990). By statute, "every driver and

operator of a vehicle approaching a stop intersection indicated by a stop sign shall stop before entering the cross walk on the near side at a clearly marked stop line . . . . After having stopped, the driver shall yield the right of way to all vehicles which have entered the intersection from another highway or which are approaching so closely on said highway as to constitute an immediate hazard." LA. REV. STAT. § 32:123(B).

In addition, Louisiana courts recognize that "[a] left turn is one of the most dangerous maneuvers that a driver may execute and requires the exercise of great caution." *Harris v. DeBrueys*, 926 So. 2d 627, 630 (La. Ct. App. 2006). The turn "must not be undertaken until the turning motorist ascertains that the turn can be made in safety. A left-turning motorist involved in an accident is *burdened with a presumption of liability* and the motorist must show that he is free from negligence." *Reed v. State Farm Mut. Auto. Ins. Co.*, 929 So. 2d 871, 874-75 (La. Ct. App. 2006) (emphasis in original) (quoting *Thomas v. Champion Ins. Co.*, 603 So. 2d 765, 767 (La. Ct. App. 1992)); *see also Slagel v. Roberson*, 858 So. 2d 1288, 1290 (La. Ct. App. 2003) (noting that the left-turning party must "explain how the accident occurred and [] show that he is free from negligence"). Furthermore, a driver has "a right to assume that the left-turning motorist will obey the law in allowing him to continue in his proper lane and will yield to his right-of-way." *Slagel*, 858

5

So. 2d at 1291; *see also Sanchez Fernandez v. Gen'l Motors Corp.*, 491 So. 2d 633, 636 (La. 1986) ("A motorist on a right of way street is entitled to assume that motorists on the unfavored street approaching a stop sign will obey the traffic signal and will stop, look and yield the right of way to traffic proceeding on the favored street.").

Accordingly, although Williams is the plaintiff in this action, she is burdened with the presumption of liability and must demonstrate that she is free from negligence. It is undisputed that she came to a complete stop at the stop sign, that she looked both ways, and that she saw Chaisson's vehicle during the stop. (R. Doc. 23, Ex. A at 3.) According to the deposition testimony provided, Chaisson was at or near a mailbox near the corner of Karla and Amanda when Williams pulled up to the stop sign. All further details are difficult to discern from Williams's deposition, as the testimony is garbled and internally contradictory.

Williams makes clear that she did not know whether Chaisson had already delivered mail to the mailbox. (*Id.* (stating that she was "not sure if [Chaisson] had done put her mail. But she had done like came around that area. I don't know what she was doing. I don't know what she was doing.")) Precisely where Chaisson was and whether she was moving at the time Williams stopped at the stop sign cannot be determined from the

deposition, as Williams provides internally contradictory testimony on these issues. (*Id.*) But Williams testified that there was an additional mailbox between her and Chaisson at the time that Williams pulled to the stop sign. The relevant testimony reads as follows.

Q:  Was she, was she stopped at the house, at the mailbox?

A:  She hadn't made it to me. So I don't know if she was at a mailbox or she was in the middle.

Q:  Was she stopped?

A:  Yeah, I think so.

Q:  Do you recall if she was stopped at the mailbox at the house on the corner of Karla and Amanda?

A:  No, she hadn't stopped there.

Q:  Where was she stopped then?

A:  She, she was in the middle —

Q:  In the middle of what?

A:  — somewhere.

Q:  I'm sorry.

A:  Coming towards me. She was in the middle.

Q:  In the middle of the road?

A:  No, on the side. Like she had it pulled on the side to get to the mailbox.

Q:  Okay, I'm not sure what you mean by in the middle.

A:  She wasn't — I — she wasn't in the middle. She wasn't at the mailbox yet.

(R. Doc. 23, Ex. A at 3.)  From this testimony, it appears that there was a mailbox in front of the house on the corner of Karla and Amanda, which was between the two vehicles.  Chaisson was pulled over to the side of the road delivering mail, but had not yet stopped at this mailbox.

Williams further testified that, when she pulled away from the stop sign and into the intersection, it appeared as if Chaisson was stopping at the corner mailbox.  Williams stated that she saw the mail truck and saw it was safe to go.  When asked how she knew that it was safe to execute the left turn, Williams said, "[b]ecause [Chaisson] wasn't — she was like there, you know, coming but wasn't — she was slow.  And I was pulling. And she was like, okay, maybe she's going to put in mail or something." (*Id.*)  While it is not exactly clear from this statement what Chaisson was doing, it is clear that Williams thought it was safe to make the turn and that Chaisson was slowly moving toward her.

This testimony is largely corroborated by Williams's passenger and daughter, Dominica Nora, who was in the backseat of the vehicle at the time of the collision.  She testified that, when Williams's vehicle stopped at the stop sign, Chaisson was stopped at a mailbox.  She further noted that Chaisson was going a "normal speed" once she started moving.  Her testimony first states that she does not recall when the mail truck began moving,

but she later responds "yes" when asked if the mail truck began moving when Williams proceeded through the stop sign. (R. Doc. 29 at 9.) Nora, however, testifies that the mail truck was at the mailbox on the corner of the intersection. (*Id.*)

The Court must determine whether Williams has met her burden of demonstrating that, despite her left turn and the consequent presumption of liability, she has explained how the accident occurred and demonstrated that she is free from negligence. *Reed*, 929 So. 2d at 874-75; *Slagel*, 858 So. 2d at 1290. A left-turning driver will be found

> free of negligence if [she has] made the proper signal and commenced the turn upon a reasonable belief, after observing approaching traffic, that the turn would not unduly interfere with the progress of approaching traffic, or where the sole proximate cause of the accident was excessive speed, lack of lookout, and/or lack of control on the party of the approaching vehicle in failing to observe a seasonably-signaled left turn intent and continuing without attempt to bring the vehicle under control.

*Anderson v. May*, 812 So. 2d 81, 85 (La. Ct. App. 2002); *see also Severson v. St. Catherine of Sienna Catholic Church*, 707 So. 2d 1026, 1030 (La. Ct. App. 1998). As discussed below, plaintiffs have provided no evidence that might demonstrate that Chaisson's operation of her vehicle involved "excessive speed, lack of lookout, and/or lack of control," much less have they shown that these forms of carelessness was the *sole* proximate cause of the accident. Williams can thus overcome her burden of liability only by showing that she "commenced the turn upon a reasonable

belief, after observing approaching traffic, that the turn would not unduly interfere with the progress of approaching traffic."

The Court finds that a genuine issue of material fact exists as to whether she has done so.  The deposition evidence, taken as a whole, indicates that Williams stopped at the stop sign, looked both ways, and saw Chaisson's vehicle.  An issue of fact remains as to where Chaisson's vehicle was at this time, as Williams and Nora give different accounts of which mailbox it was in front of. An issue of fact also remains as to whether Chaisson was moving at the time that Williams pulled through the intersection. Williams testifies that "she was coming" when her car started to pull away from the stop sign, but Nora's testimony indicates that the mail truck began moving during the turn.  (R. Docs. 23, Ex. A at 3; 29 at 9.)  Finally, Williams testified that she thought the turn was safe to execute because Chaisson was moving slowly and appeared as if she was pulling over to deliver mail.  This deposition testimony, viewed in the light most favorable to plaintiffs, is sufficient to preclude summary judgment on the issue of Williams's negligence.

**IV. Conclusion**

For the foregoing reasons, defendants' motion for summary judgment is DENIED.

New Orleans, Louisiana, this ___5th___ day of November, 2009.


_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE